O

# United States District Court
# Central District of California

| | |
|---|---|
| ELOY MARIN SAUCEDO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KRISTI NOEM et al.,<br><br>　　　　Defendants. | Case № 2:25-cv-11051-ODW (RAOx)<br><br>**ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [3]** |

## I.　　INTRODUCTION

Petitioner Eloy Marin Saucedo applies *ex parte* for a temporary restraining order requiring, among other things, his release from custody or an individualized bond hearing before an immigration judge. (Mem. P. &. A. ISO Ex Parte Appl. ("TRO") 6, Dkt. No. 3-1.) Respondents Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); David Marin, Adelanto ICE Field Office Director; and Executive Office for Immigration Review ("EOIR"), oppose the request. (Opp'n, Dkt. No. 7.) For the reasons discussed below, the Court **GRANTS** Petitioner's TRO.

## II. BACKGROUND

Petitioner is a resident of Wilmington, California, and has been residing in the United States since around 1999. (Pet. ¶ 40, Dkt. No. 1.) He has no criminal history, has been steadily employed for decades, is married, and has four children who are United States citizens, three of whom are still minors. (*Id.* ¶ 44.)

On October 15, 2025, ICE agents arrested Petitioner as part of a widescale immigration enforcement action in Los Angeles and charged him with entering the United States without inspection. (*Id.* ¶¶ 1–3, 41.) Petitioner is currently detained at the ICE Adelanto Detention Cetner in Adelanto, California ("Adelanto"). (*Id.* ¶ 2.) ICE denied Petitioner's request for release. (*Id.* ¶ 43.) On November 17, 2025, an Immigration Judge ("IJ") denied Petitioner's request for a bond determination on the basis of a new ICE policy ("New Policy"). (*Id.* ¶¶ 5–6, 8, 46.) The New Policy deems individuals like Petitioner to be "applicants for admission" under 8 U.S.C. § 1225(b)(2)(A), and therefore "ineligible for release in bond redetermination hearings." (*Id.*)

Pursuant to the New Policy, "all individuals who arrived in the United States without inspection, regardless of how long they have lived in the United States" are deemed "applicants for admission" and subject to mandatory detention under § 1225(b)(2)(A). (*See id.* ¶¶ 5–6, 8–10.) Prior to the New Policy, "people who entered the country without inspection" were not considered detained under § 1225, but rather § 1226(a). (*Id.* ¶¶ 27–29.) Section 1226(a) allows for release on bond or conditional parole, but § 1225(b)(2)(A) does not. The IJ here applied the New Policy to Petitioner's case, found him to be an applicant for admission subject to mandatory detention under § 1225(b)(2)(A), and denied his bond determination request. (*Id.* ¶ 5.)

Based on these allegations, on November 18, 2025, Petitioner filed a Petition for Writ of Habeas Corpus on the grounds that his detention is unlawful and violates § 1226(a); the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2); and Petitioner's Fifth Amendment Right to Due Process. (*Id.* ¶¶ 48–57.) That same day,

Petitioner filed this Application for a Temporary Restraining Order and Order to Show Cause. (Ex Parte Appl., Dkt. No. 3.) In the TRO, Petitioner seeks an order (1) requiring Respondents to release him or provide him with an individualized bond hearing before an IJ pursuant to § 1226(a) within seven days, (2) enjoining Respondents from relocating him outside of the Central District of California pending final resolution of this case, and (3) ordering Respondents to show cause why a preliminary injunction should not issue. (*Id.* at 2.)

### III. LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

Courts in the Ninth Circuit evaluate the *Winter* factors on a sliding scale: "serious questions going to the merits . . . and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## IV. DISCUSSION

Respondents argue the Court lacks jurisdiction to consider Petitioner's challenge, (Opp'n 5–9), and that, even assuming jurisdiction, Petitioner fails to satisfy the requirements for a TRO, (*id.* at 9–14.)

### A. Jurisdiction

Respondents contend that § 1252(b)(9) and (g) precludes this Court's review of Petitioner's TRO. (Opp'n 5–9.) The Court has considered identical arguments from Respondents in nearly identical factual circumstances and incorporates and adopts by reference its jurisdictional analyses from those recent decisions. *See Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDx), 2025 WL 2986672, at *2–4 (C.D. Cal. Oct. 22, 2025); *Gonzalez v. Noem*, No. 5:25-cv-02054-ODW (ADSx), 2025 WL 2633187, at *2–3 (C.D. Cal. Aug. 13, 2025). For the reasons stated in those orders, the Court finds here that § 1252(b)(9) and (g) does not deprive this Court of jurisdiction to review Petitioner's claims.

### B. Merits of the TRO: *Winter* Factors

Having determined that the Court has jurisdiction over Petitioner's TRO, the Court turns to the *Winter* factors.

#### *1. Likelihood of Success on the Merits*

Petitioner contends that § 1226(a), not § 1225(b)(2), governs his detention. (TRO 9–19.) Respondents argue that § 1225(b)(2) governs because it applies to "applicants for admission," and Petitioner falls under this category because he is present in the United States without having been admitted. (Opp'n 9–13.)

As with jurisdiction, the Court has considered identical arguments in nearly identical factual circumstances and incorporates and adopts by reference its analyses in those recent decisions. *See Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285, at *2 (C.D. Cal. Aug. 15, 2025); *Garcia*, 2025 WL 2986672, at *4–5; *Gonzalez*, 2025 WL 2633187, at *4–5. For the reasons stated in those decisions, the Court finds again that the statutory text does not support

Respondents' contention that § 1225 governs where, as here, an alien is present in the United States without admission. (Opp'n 9); *see Gonzalez*, 2025 WL 2633187, at *4 ("If Respondents are correct that Congress meant for § 1225 to govern all aliens present in the United States who had not been admitted, it would render the exception made under § 1226(c)(1)(E) unnecessary. This does not stand to reason for, as Respondents aptly note, statute should be construed so that effect is given to all its provisions." (internal quotation marks omitted)). To the contrary, the plain text actually supports Petitioner's argument, that § 1226(a) applies to his detention. (TRO 9–17); *see Arrazola-Gonzalez*, 2025 WL 2379285, at *2 ("[Section 1226] 'applies to aliens already present in the United States.'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018))). Finally, Respondents continue to rely on the same legal authority that this Court has previously found distinguishable and unpersuasive on this point. (Opp'n 11–12); *see Garcia*, 2025 WL 2986672, at *5 (finding *Matter of Lemus-Losa*, , 25 I. & N. Dec. 734 (BIA 2012), and *Florida v. United States*, 660 F. Supp 3d 1239 (N.D. Fla. 2023), distinguishable and unpersuasive to this legal analysis).

As in prior cases with identical legal arguments and nearly identical factual circumstances, the Court finds here that Petitioner shows a likelihood of success on the merits of his claim that § 1226(a), not § 1225, governs his detention.[1]

2.   *Likelihood of Irreparable Harm*

Petitioner contends he will suffer irreparable harm in the absence of a TRO as he will continue to be unlawfully detained without a bond hearing before an IJ. (TRO 19–20.) Respondents do not dispute that continued detention without a bond hearing constitutes irreparable harm. (*See generally* Opp'n.)

---

[1] Petitioner also argues that prudential exhaustion is not required, based on futility, irreparable injury, and agency delay. (TRO 22–27.) Respondents do not oppose on this point or otherwise contend that Petitioner must first exhaust administrative review. (*See generally* Opp'n.) "As the [Board of Immigration Appeals's ("BIA")] interpretation of the statutory language is being challenged in this instance, Petitioner['s] assertion that an appeal would be futile is persuasive." *See Arrazola-Gonzalez*, 2025 WL 2379285, at *3.

The harm resulting from Petitioner's continued detention is the deprivation of his right to a bond hearing and due process. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that "[f]reedom from imprisonment . . . lies at the heart of the liberty" that the Due Process Clause protects); *Melendez v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). The Court finds that Petitioner's continued detention without due process and without a bond hearing would cause, and is causing, immediate and irreparable injury.

Thus, Petitioner demonstrates that continued detention without a bond hearing is likely to result in irreparable harm.

### 3. Balance of Equities and Public Interest

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Petitioner contends that a TRO is in the public interest because he is challenging the New Policy for violating federal laws and the constitution, and Respondents cannot be harmed by being required to end an unlawful practice. (TRO 21–22.) Respondents argue that they have a "compelling interest in the steady enforcement of [the] immigration laws" and that Court "intervention would only disrupt the status quo." (Opp'n 13–14.)

As the Court has previously expressed, because the parties dispute the legality of the application of the New Policy, the Court is unpersuaded that granting the TRO here would disrupt the status quo, especially when the New Policy hinders Petitioner's due process rights. *See Garcia*, 2025 WL 2986672, at *6; *Arrazola-Gonzalez*, 2025 WL 2379285, at *3; *Gonzalez*, 2025 WL 2633187, at *6. "[T]o the extent that the BIA's adopted statutory interpretation deprives Petitioner[] of [his] constitutional rights and violates federal law, 'it is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue.'" *Gonzalez*, 2025 WL

2633187, at *6 (quoting *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022)). Accordingly, the last two *Winter* factors weigh in favor of an injunction.

## V. CONCLUSION

For the reasons discussed above, the Court finds that all four *Winter* factors weigh in favor of a TRO. Accordingly, the Court **GRANTS** the TRO. (Dkt. No. 3.) It is hereby **ORDERED** that:

- Respondents shall release Petitioner or, in the alternative, provide him with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) **within seven (7) days** of this Order;
- Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this case; and
- Respondents shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **November 25, 2025**, as to why the Court should not issue a preliminary injunction in this case. Petitioner may file a reply by **December 1, 2025**. The Court **SETS** a hearing on the preliminary injunction for **December 4, 2025, at 10:00 a.m.**, via Zoom.

**IT IS SO ORDERED.**

November 20, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

7